| 59 | 121 |
|----|-----|
| 128a | 613 |
| 59 | 121 |
| 6ap186 | |

</div>

JOHN   HOOPER, RESPONDENT, *v.* THE   JOHNSTOWN, GLOVERSVILLE   AND   KINGSBORO   HORSE   RAILROAD   COMPANY, APPELLANT.

*Horse railroad company — duty of, in respect to guarding an embankment upon which its tracks are laid.*

In an action brought to recover damages resulting from the death by accident of a child twelve years old, alleged to have been occasioned by the wrongful act of the defendant, a horse railroad company, it appeared that at the place where the accident occurred the tracks of the defendant ran alongside of a public highway near to a creek, the earth sloping gradually from the tracks to the edge of an embankment, over which latter the child appeared to have fallen.   This embankment, which was occupied by the defendant with the consent of the owner, did not constitute any part of the public highway, although it was substantially on a level with the highway, and might from appearances be thought to be a part thereof.

*Held,* that the defendant was under no obligation to prevent persons from going upon the embankment.

That unless, by implication, it invited the public to go on this land, or had permitted something in the nature of a snare, such as an excavation or a pile of material thereon, it was not bound affirmatively to guard the surroundings so that no one could stray thereon to his injury.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Fulton on

the 9th day of June, 1890, in favor of the plaintiff, after a trial at the Fulton County Circuit, before the court and a jury, at which a verdict was rendered in favor of the plaintiff for the sum of $950, with notice of an intention to bring up for review on such appeal the refusal of the court to grant the defendant's motion for a nonsuit, and also an order denying the defendant's motion to set aside the verdict and for a new trial, which was entered in the office of the clerk of the county of Fulton on June 6, 1890.

_Baker & Burton_ and _Matthew Hale_, for the appellant.

_Barnwell Rhett Heyward_, for the respondent.

LEARNED, P. J.:

This is an appeal by defendant from a judgment on a verdict and from an order denying a new trial. The action was brought by the administrator of Theresa Hooper, a child about twelve years old, to recover damages for her death, alleged to have been occasioned by the wrongful act of defendant.

The complaint alleged that the defendant in constructing its track wrongfully took possession of a part of the highway between Johnstown and Gloversville and maintained exclusive control thereof, the part being such as was used by foot passengers, and thus that defendant interfered with the use of the highway and added to the danger of traveling thereon, especially at the point where the deceased came to her death. That the deceased fell over an embankment maintained by defendant and was drowned.

It appears by the evidence that under an order of the court, in 1879, the defendant was permitted to construct its road along and upon the public highway. And the court charged that the defendant was rightfully in possession. This highway runs at one place not far from a creek running southward, and there is a point where a sharp bend in the creek brings it quite near to the highway on the east side. The plank road is built upon the west side of the highway, and the horse railroad in this part of the highway is east of the plank. Previous to 1884 the defendant's track was upon the east side of the highway; and there was a beaten foot-path along the east side of the track. At the point in question the land adjacent to the highway belonged to Mr. Place. And this land between the creek and the highway was wet and swampy. The side of the high-

way sloped down to this swampy land.   In that year the defendant. filled in a piece of the land east of the highway, building up a docking with timbers close to the sharp bend of the creek.   There had been an old fence at the side of the highway, which was greatly decayed.   The remains of this were used in the filling.   The filling was from four to six or seven feet; and the widest point forty to fifty feet wide.   The defendant then moved its rail eastward in one place some five or six feet, and further along some twenty-five or thirty feet.   At the south end of the embankment which is near the tree the space between the east rail and the edge is about eight feet.   It widens going north, and fifteen feet north of the tree it is sixteen feet, and it continues to widen beyond that place.   This was done in order to straighten the road.   Between the track and the perpendicular docking the distance in some places is five or six feet, at the widest about twelve.   In doing this work a depression was left between the tracks and the plank-road; and a box drain was put under the tracks to carry off the water from this depression.   There is still a beaten track of about two feet wide east of the car tracks, and the earth slopes gradually to the edge of the embankment.

The deceased left her father's house a little before 1 P. M. to go to school a quarter of a mile distant.   Plaintiff's house and the school-house were west of the highway, so that it was not necessary for her to cross.   On the same day, after six o'clock, her body was found in the creek, about eight or ten feet from a tree, which stood at the south end of the embankment.   There was found a little fresh track on the bank, about twelve inches by six, some ten feet from a tree north of the tree, or nearly opposite where the body was found, and some foot-prints near by.   No one saw her fall in. She was seen about one o'clock going along the foot-path a little north of the place where she probably fell in.   She was tossing a ball in the air and catching it, moving towards the school-house. The ball was a solid rubber ball which would not float; and one witness testified that he had let her take it that day after dinner, and before she reached the place of the supposed accident that she tossed it up in the air and that he had never had it since.

The defendant insisted that the filling in and docking were outside of the line of the highway, and were on private property, where defendant had gone by consent of the owner.   That, there-

fore, the defendant was under no liability to construct any barrier; and, further, that it was not shown that the deceased was not guilty of any contributory negligence.

The court held that if the present track of the defendant was outside of the highway, defendant owed no duty to the deceased, unless it should be found that defendant practically invited the public to use the place as a part of the highway, to which the defendant excepted.

If the defendant, after laying its track for some distance upon the highway, had then diverged therefrom, and had not returned thereto, but had constructed an embankment of its own upon private property, it would hardly be claimed that defendant would have been under any obligation to erect a fence on such an embankment to prevent foot passengers from falling off. Even if defendant had not prevented foot passengers from walking along such supposed embankment, it would not have been bound to protect them. But they would go there at their own risk. The decision in *Cusick* v *Adams* (115 N. Y., 55), would decide this; and in the case supposed, even if the embankment thus erected for its own use by the defendant should have the appearance of a highway branching off from the real highway, yet we do not see that this would make the defendant bound to protect a foot passenger from falling off. In the *Cusick Case* it was said that the question was not one of appearance, nor of what the plaintiff supposed, but of what was the defendant's duty.

If, again, this defendant, without going at all upon the highway, had built alongside of the highway an embankment on which it had laid its track, and if the outer-side of such embankment were perpendicular at some place, we cannot see that the defendant would have been bound to protect the place so that foot passengers could not fall off. We suppose that railroad companies owe to persons who walk along the side of the track no obligation to guard them against falling off an embankment.

The present case differs from those which we have above supposed simply in this, that in the present case the defendant, for much of its distance, laid its track on the highway, and that at the place where the accident occurred, although the defendant's track was not on the highway, yet the embankment was substantially on a level with the highway, and it might be thought to be a part thereof.

But it is to be observed, in this connection, that there was a depression between the track and the plank-road, which, in some degree, separated one from the other. Even aside from that circumstance, we do not see what obligation the defendant was under to a person going upon this land. It was not a part of the highway. It was occupied by defendant by the consent of the owner. The defendant was not bound to prevent persons from coming upon its land. It did not invite them.

The case of *Beck v. Carter* (68 N. Y., 283), cited by the plaintiff, illustrates the doctrine applicable here; and in the opinion several cases are given showing the ground of liability, when any existed. Thus it is said that, in the absence of special circumstances, if one person traveling on the highway deviates therefrom and falls into a pit or excavation on the adjoining land, the owner is not responsible for the resulting injury. But if the excavation is adjacent to the highway, or so near thereto as to make the use of the highway dangerous, the person making it will be answerable to a traveler, who, while using ordinary care, falls into it and is injured. In *Beck v. Carter* the land had, by use long continued, been made for the time being a public place and part of the highway, and defendant made an excavation therein. The court said, where the owner of land expressly, or by implication, invites a person to come on his land, he cannot permit anything in the nature of a snare to exist thereon. If he gives but a bare license, the licensee takes the risk.

Now, if we compare the present case with that, or with the cases there cited, we shall see that, where the owner has been held liable, he has, at least by implication, invited the public to come on his land, or he has permitted something in the nature of a snare, such as an excavation or a pile of material into or upon which the injured person has ignorantly gone. But nothing of that kind exists here. There was no unseen snare; no excavation; no pile of material. The public were not invited to walk over the premises. But if they did walk there was nothing to obstruct them. No dangerous place existed in the path were they were accustomed to go. If the defendant had piled up railroad ties or other materials upon the foot-path already described, and some person walking there at night had fallen upon such ties or material, then there would have been a case somewhat similiar to that of *Beck v. Carter*.

The defendant was not under the obligation which might rest on the commissioner of highways or the owner of a turnpike road, to provide suitable fences at dangerous places. Though we need not decide whether even they would be liable to a foot passenger, under circumstances like those of the present case. But, certainly, we are unable to say that the defendant was guilty of negligence. For while the defendant was perhaps not at liberty to put any dangerous obstruction in the foot-path which had been used, without taking some precaution to warn travelers of the same, we do not see that it was bound affirmatively to guard the surroundings of that foot-path so that no one could stray therefrom to his injury.

Nor does it seem to us that the plaintiff showed that the deceased came to her death without negligence on her part. There is no evidence showing what caused her to fall into the water. If she was walking in the path she could not have fallen off the embankment. Whether she carelessly ran to the edge in pursuit of her ball; whether she was pushed in by some unknown person; whether she was frightened and thus ran to the edge and fell in, all these are matters entirely unknown. The accident happened in the day-time and she could not have wandered unknowingly from the path. We may conjecture that her ball rolled to the edge and off, and that she followed it heedlessly. But this is conjecture. She was eleven years old and familiar with the way to school, where she had been five or six years. She was, therefore, capable of exercising some care and prudence. It seems to us that the decision in *Reynolds* v. *New York Central and Hudson River Railroad Company* (58 N. Y., 248), and in *Wendell* v. *New York Central and Hudson River Railroad Company* (91 id., 420), and the remarks of the court in *Bond* v. *Smith* (113 id., 385) apply forcibly to this case, and that the plaintiff failed to show that the deceased was free from contributory negligence.

The judgment and order should be reversed and a new trial granted, costs to abide event.

LANDON and MAYHAM, JJ., concurred.

Judgment and order reversed, new trial granted, costs to abide event.